IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL KENNETH NEMEE and and MICHELLE SEOBHAN McKEE NEMEE,<br><br>Plaintiffs/Appellants,<br><br>vs.<br><br>COUNTY OF CALAVERAS,<br><br>Defendant/Appellee,<br>_____ / | CASE NO. CV F 12-0002 LJO JLT<br><br>**ORDER ON MOTION TO STAY** (Doc. 11) |

### INTRODUCTION

This is an appeal from an adversary proceeding in a bankruptcy action wherein the bankruptcy judge granted judgment in favor of defendant/appellee County of Calaveras' ("County") and further granted a permanent injunction enjoining the use of an 18-hole golf course owned, operated, and developed by plaintiffs/appellants Michael Kenneth Nemee ("Mr. Nemee") and Michelle Seobhan McKee Nemee ("Ms. Nemee) (collectively "Nemees"). The Nemees argue that the bankruptcy judge erred as a matter of law by concluding that the golf course is not a permitted use under the applicable County zoning ordinances, which allows land use for agricultural and agritourism purposes.

In this motion, the Nemees seek to stay enforcement of the judgment pending the resolution of the appeal. While acknowledging that the "critical factor in this Motion (sic) is whether the movant is

1

1  likely to prevail on the merits on appeal," the Nemees's motion focuses mainly on the injury that would
2  occur if the stay were lifted; to wit, that within months, the Nemees would lose their multi-million dollar
3  golf course.  For the reasons set forth below, this Court finds that the Nemees raise serious questions on
4  the merits of one claim, the balance of equities tips sharply in the Nemees' favor, and the Nemees have
5  established the probability of irreparable harm.  Accordingly, this Court GRANTS the Nemees' motion
6  to stay enforcement of the judgment of the bankruptcy court pending appeal.

## FACTUAL BACKGROUND

The bankruptcy judge detailed the findings of fact in an inclusive, 65-page memorandum opinion and decision ("Bankruptcy Opinion").  As identified below, the Nemees do not challenge the bankruptcy court's findings of fact in their statement of issues presented for review.  The four issues presented challenge the bankruptcy judge's conclusions of law, although the fourth issue could be construed to include a challenges to some factual findings.  Similarly, none of the seven points raised by the Nemees in the motion to stay challenge directly the findings of fact by the bankruptcy judge.  Accordingly, this Court finds that the findings of fact present on pages 8 through 37 of the Bankruptcy Opinion are not at issue in either the appeal or the pending motion to stay and this Court shall defer to the bankruptcy court's findings of fact.  The Bankruptcy Opinion includes the following relevant findings of fact:

### Acquisition of Property

The real property at issue consists of a 160-acre parcel and a 120-acre parcel (the "Property"), which are owned by Nemees and are property of their bankruptcy estate.  The Nemees began acquiring parcels of real property located in Calaveras, County, California in 2001.  The Nemees purchased several parcels, obtained lot line adjustments, transferred title to portions of these properties, and had other persons added to title on portions of the properties.  These include the two parcels that make up the Property.  At the time the Property was purchased, it was being used as a cattle ranch and olive orchard. The Property was zoned as agricultural preserve, which restricts use of the property subject to a Williamson Act Contract. See Cal. Gov. Code §§51200 et seq.

### Construction of Golf Course, County Complaints, and County Action

Quickly after acquiring the Property, the Nemees commenced a survey of the Property.  The survey resulted in the County receiving complaints of potential unauthorized development.  Dan

1  Hendrycks ("Mr. Hendrycks"), a County planner, wrote an August 9, 2011 letter to the Nemees to inform
2  them of the complaints the County had received.  These complaints included the suggestion that the
3  Nemees were constructing a golf course.  Mr. Hendrycks wrote in the August 9, 2001 letter that a golf
4  course, whether for public or personal use, was not allowed on property zoned for agricultural preserved
5  under the County's ordinances which were applicable in 2011.

6        Mr. Nemee responded to Mr. Hendrycks letter in an August 14, 2011 letter.  In the written
7  response, Mr. Nemee directed Mr. Hendrycks to speak with Tom Jeffries ("Mr. Jeffries") concerning
8  the Property any and development thereon.  Mr. Jeffries was an engineer hired by Mr. Nemee.  Mr.
9  Nemee further claimed in his letter that he had spoken with Jerry Howard ("Mr. Howard"), the County
10 Agricultural Commissioner, concerning agricultural uses for the Property.  Mr. Nemee did not discuss
11 in his letter any ongoing or intended construction of the golf course on the Property.

12       The parties presented evidence at trial regarding the discussion between Mr. Nemee and Mr.
13 Howard related to agricultural uses on the Property.  Mr. Nemee testified that Mr. Howard told him that
14 he did not believed that the construction of a golf course for private, personal use by the Property owner
15 was a violation of the Williamson Act.  Mr. Howard testified that he had one meeting with Mr. Nemee
16 at the Property. On the Property, he observed an existing olive orchard and the construction of golf holes
17 which he understood from Mr. Nemee to be for the personal use by the Nemees.  Mr. Howard further
18 testified that any discussion that he had with Mr. Nemee concerning the use of the Property as a
19 personal, private golf course was only in the context of the Williamson Act restrictions and not County
20 zoning ordinances.  Mr. Howard further testified that County zoning ordinances were not within his
21 jurisdiction as County Agricultural Commissioner, and he would not purport to make any statements
22 concerning compliance with the zoning ordinances.  Based on this evidence, the bankruptcy court
23 concluded that the communications between Mr. Nemee and Mr. Howard were limited to the Nemees
24 construction of a private, personal golf course, and Mr. Howard's opinions were related to whether that
25 use would conflict with the Williamson Act.

26       Mr. Jeffries also responded to Mr. Hendrycks' letter in an August 20, 2001 written response.  Mr.
27 Jeffries wrote that the Nemees contemplated installing a golf course in the future, but that no on-site
28 work had been done to install or develop such use.  Mr. Jeffries claimed that the survey was to depict

boundaries and other natural features of the Property. Mr. Jeffries further wrote that the Nemees desired to install a vineyard on the Property, and to do so would require a portion of the property to be graded. Mr. Jeffries asserted that the County has "no evidence of any construction of a golf course" and affirmatively represents that no golf course is under construction on the Property. The bankruptcy judge pointed out that the statements in Mr. Jeffries' letter stands in contrast to the testimony of both Mr. Nemee and Mr. Howard of their conversation prior to this letter regarding the construction of a golf course on the Property, purported for personal, private use. Having considered the testimony and other evidence, the bankruptcy court found that the statements Mr. Jeffries made in his August 20, 2001 letter, on behalf of the Nemees, were "creatively misleading at best and intentionally false at worst." Bankruptcy Opinion, p. 11.

By 2003, the County Building Department became involved with the Nemees' activities on the Property. In an August 27, 2003 letter, Ray Waller ("Mr. Waller") of the Building Department notified the Nemees that the County had received numerous complaints about a massive grading project on the Property. Mr. Waller notified the Nemees that they were required to obtain and submit engineering and grading plans pursuant to County ordinances.

With respect to this heavy grading activity, the bankruptcy court found that Mr. Nemee's testimony established that as of August 2003, the Nemees were in the process of constructing the commercial 18-hole golf course on the Property. Indeed, Mr. Nemee testified that as early as 2001, the Nemees had begun drawings to develop the Property for an 18-hole golf course. Moreover, the Nemees were developing the golf course as part of a larger planned commercial development that included a lodge, clubhouse, restaurant, bar, and golf academy. Collectively, the development was to be called the The Ridge at Trinitas, and was to be used as a resort. The bankruptcy court found that this planned enterprise was not for private, personal use, but for a commercial purpose.

On October 1, 2003, Mr. Nemee sought a change in the County zoning ordinances to allow golf courses as a conditional use for any property zoned for agricultural preserve. The bankruptcy court found that this letter demonstrates that the Nemees clearly understood that a golf course was not a permitted use on the Property under the then-existing zoning ordinances. Though this letter was signed by Mr. Nemee and send on Mr. Nemee's letterhead, Mr. Nemee disavowed portions of his statements

4

in the letter at trial.  Mr. Nemee testified that he did not read the letter before signing it.  The bankruptcy court found that Mr. Nemee's testimony was not credible.

In November 2003, the County Compliance Unit notified the Nemees that an administrative hearing was set to address the alleged zoning code violations on the Property.  The alleged violations focused on the grading being done without a permit.  Subsequently, the administrative hearing was removed from the agenda to allow the parties to attempt to resolve the issue.

On November 20, 2003, Robert Bliss ("Mr. Bliss") of Jeffries Engineers, Inc. sent Mr. Waller of the County Building Department a letter.  In this letter, Mr. Bliss represents that the work being done on the Property is "more of a clearing and brushing project to develop a private golf course."  Mr. Bliss further wrorte that there are only a small amount of cuts and fills to construct greens and tees, isolated to only 75 acres within the 400 acres of the Property.  Mr. Bliss concludes that a grading plan is not warranted because of the "small isolated" nature of the grading, which is contained well within the boundaries of the 400 acres.  Mr. Jeffries reiterated these statements in a January 9, 2004 letter to Mr. Waller.  The bankruptcy court found that "as actual events demonstrate, these statements...are again creatively misleading at best and intentionally false at worse." Bankruptcy Opinion, p. 15.  The bankruptcy court notes that the commercial 18-hole golf course is located on 380 acres of the Property.

In July 2004, the Nemees applied with the County for a General Plan Amendment, Zoning Amendment, and Tentative Subdivision Tract Map for the Property.  In the application, the Nemees sought to subdivide the 160-acre parcel of the Property to create twelve 5-acre parcels, one 98.8-acre parcel, and to do minor grading for house pads and roadways.  The application makes no reference to a golf course, and the attached maps of the proposed development do not show a golf course.  Nevertheless, Mr. Nemee testified that at the time of the application, the Nemees intended to construct six golf hoes for the homeowners, who they expected to be family members and friends. The application was determined to be incomplete, and the Nemees were notified that they were required to amend and re-file the deficient application.

In August 2005, Mr. Waller communicated by email to Robert Sellman ("Mr. Sellman"), the County's then- Interim Planning Director, that the Nemees could construct a private golf course on the Property for the personal use and for the use of their friends and family.  Mr. Sellman testified that he

disagreed with Mr. Waller and that his opinion was that even a private, personal-use golf course was not permitted on property zoned for agriculture.

In a letter to Mr. Sellman, the Nemees communicated the larger development plans for the Property. This larger development included an 18-hole golf course with 10,000 to 12,000 rounds per year; private golf tournaments; private golf lessons; two-story, 18,000-square-foot clubhouse/olive tasting facility; bar and grill; banquet facilities; sale of golf equipment; 22,000-square-foot lodge with 30 guest rooms; swimming pool; exercise room; spa; and a facility to be used as dormitory housing for group golf lessons, which Mr. Nemee described as an academy. This was to be placed on 440 acres of property owned by the Nemees and other family members.

## Loans Obtained by the Nemees

Loans obtained by the Nemees for the development of the Property make clear that they were building a golf course. In September 2002, the Nemees obtained a $370,000 loan from Community Bank of San Joaquin ("Bank"). According to the bank note, the primary purpose of the loan is "Business (including Real Estate Investment)". The specific purpose was noted to be "Refinance of bare land, to be developed to a golf course." Mr. Nemee disavowed knowledge that the purpose of the loan was to develop a commercial golf course. He testified that he did not read that part of the loan. The bankruptcy court found that Mr. Nemee's testimony was not credible and that as early as 2002, the Nemees were obtaining business loans for construction of a commercial golf course.

The Nemees continued to obtain loans from the Bank in subsequent years, with the primary purpose of the loan is written to be "Business (including real estate development)," with the specific purpose written to be "Capital for construction, and related expense for Trinitas Golf course." These loans included an August 25, 2005 loan in the amount of $500,000, and a January 27, 2006 loan in the amount of $1,300,000.

## Meeting with Ms. Moreno

In the Fall of 2006, a meeting was held with Mr. Nemee and Bank representatives to discuss a proposed modification of the January 27, 2006 loan to include $300,00 in additional credit. Mr. Nemee invited Stephanie Moreno ("Ms. Moreno") to the meeting. Ms. Moreno was the County Community Development Director. All parties agree that Ms. Moreno attended the meeting, but the parties dispute

the purpose and subsequence of Ms. Moreno's attendance. Mr. Nemee testified that Ms. Moreno attended the meeting to assist the Nemees in getting additional loans from the Bank and an extension of the due date for the existing loan. Mr. Nemee further testified that he relied on statements made by Ms. Moreno at the meeting that their land use application was going to be approved by the County.

Robert Puchenelli ("Mr. Puchenelli"), Bank Business Development Officer, attended the November 9, 2006 meeting. He testified that the Bank was concerned about the delays in the project and the development of the golf course. He stated that at the meeting, Ms. Moreno described the zoning application process and what she was doing to keep the Nemees' application moving. Mr. Puchenelli further testified that the Bank knew in 2005 that the golf course was under construction and that doing so was unusual since the Nemees did not have the real property entitlements to develop the golf course. Mr. Puchenelli testified that and the Bank knew that the County Board of Supervisors must approve any zoning or land use application for the golf course to be legal, and that such a decision did not rest with Ms. Moreno or County staff.

Robert Daneke ("Mr. Daneke"), a Bank employee, testified that he also attended the meeting with Mr. Nemee, other Bank representatives, and Ms. Moreno. Mr. Daneke testified that Ms. Moreno provided background about the application process and that she believed that the EIR would be processed in a timely manner. Mr. Daneke confirmed that based on their discussions, he and everyone at the meeting, including Mr. Nemee, knew that the Board of Supervisors had to approve the application and that the application had not been approved.

Subsequent to the meeting, the Bank made notes which demonstrate that the Bank knew that the construction of the golf course was illegal absent the zoning application being approved by the Board of Supervisors. For instance, in a December 14, 2006 Bank's Credit Authorization Memorandum, the Bank noted that illegal construction of the golf course was the "key risk" for the Bank. Jane Butterfield, Bank President, reviewed the Credit Authorization Memorandum, because the loan was above the lending limit of the loan officer. She testified that the November 9, 2006 meeting was organized for the Bank to develop an exit strategy for its loans with the Nemees.

The bankruptcy court found, based on the evidence and testimony, that Ms. Moreno did not represent to anyone at the November 9, 2006 meeting, or at anytime, that the Nemees' zoning and land

use application would be approved by the Board of Supervisors. The bankruptcy court further found that everyone at the November 9, 2006 meeting, including the Nemees, clearly understood that the necessary land use application had to be approved by the Board of Supervisors, not Ms. Moreno. The bankruptcy court found that Mr. Nemee's testimony that he relied on Ms. Moreno's statements that the application to be approved was not credible.

### Handling of Application by County

The Nemees presented evidence at trial at Ms. Moreno's predecessor as County Community Development Director had taken an adversarial position to the development of the Property. The bankruptcy court found that there was insufficient evidence to establish any improper conduct by the County representatives. The bankruptcy court found that "any complained of hostility and difficulty asserted by Plaintiffs is not out of the ordinary for someone attempting to obtain a significant land-use change." The bankruptcy court further found that the Nemees had not demonstrated that they were deprived of the opportunity to present their request to the Board of Supervisors.

The Nemees also complain about the work done by Keith Dunbar ("Mr. Dunbar"), who was hired by the County to prepare an EIR for the Nemees' land use application. Mr. Dunbar was subsequently terminated by the County for what the County deemed to be insufficient progress and work product. Although Mr. Nemee paid for the consultant work to be done, Mr. Nemee failed to disclose that the unpaid portion of the monies to Mr. Dunbar were returned to him by the County. Although the County's communication with Mr. Nemee regarding Mr. Dunbar's termination "could have been better managed," but the bankruptcy court found no issue with the County's termination of Mr. Dunbar.

Moreover, the bankruptcy court explained that what the Nemees describe "as an adversarial relationship with the County may well have arisen from the friction which is created by their business strategy to develop a golf course not permitted by the Zoning Ordinances. The 'build it first and then seek approval after the fact' approach generated a number of complaints and otherwise unnecessary issues for the County and the Plaintiffs to address with respect to the Property and the development the Plaintiffs desired." Bankruptcy Opinion, p. 25.

### Real and Personal Property Taxes

The Nemees also contend that increases in the real and personal property taxes related to the

1  development and operation of a commercial 18-hole golf course on the Property is evidence that the
2  County was responsible for the Nemees' proceedings with, or the County's approval of, the construction
3  of the golf course.

4        The assessed values of the real and personal property used by the County to increase or decrease
5  property taxes were based on the information provided to the County by the Nemees. As the Nemees
6  made substantial improvements to the real property through the construction of the golf course, they
7  reported those improvements to the County Assessor. The Assessor then valued the Property based on
8  that information, and the assessed value was then used by other officials to compute and collect taxes.
9  Subsequently, in 2008, the Nemees sought a reassessment of the real property value based on the County
10 asserting that the development of the golf course was illegal. The County then reduced the real property
11 taxes.

12       The County further taxed personal property used in the operation of the golf course. The Nemees
13 advised the County of the purchase of the personal property related to the golf course, and that
14 information triggered increased tax assessments against them. The increase in value based on the
15 reported information resulted in the tax collector seeking payment of higher real and personal property
16 taxes.

17       The bankruptcy court found that the assessment of taxes was not dependent on a determination
18 that the operation of the commercial golf course was legal, but that based on the information provided
19 by the Nemees. The bankruptcy noted that no law or facts have been shown that the County Assessor
20 or tax collector determine zoning compliance and legal land uses under the County zoning ordinances.

### Sophistication of the Nemees

22       The bankruptcy court noted that as "an undercurrent to the arguments presented by Plaintiffs, a
23 theme is developed that Plaintiffs are simple folk and relied upon the advice of County representatives
24 to embark on this multi-million dollar development of The Property." Bankruptcy Opinion, p. 27. The
25 bankruptcy court then explains that the evidence supports the finding that the Nemees are sophisticated
26 people who have expended $7,093,517 through 2009 in developing the Property for a commercial golf
27 course. The bankruptcy court found that the testimony that the Nemees relied upon the advice and
28 direction was neither credible nor plausible. The Nemees hired professionals to represent them in the

development and marketing of their destination golf resort. They chose and were represented by land use and engineering professionals throughout the development of the Property and land use applications. The court found that the Nemees relied on the advice of their hired professionals and their own business judgment for the decisions, not the advice of County employees or agents. The bankruptcy court noted that the development of the Property and the creation of a private membership golf club for the commercial golf course was a complex real estate, land use, and business transaction. In addition to the land use and engineering professionals, the Nemees engaged counsel to obtain approval from the State to sell securities for membership in the golf club for the commercial golf course.

The bankruptcy court further found that the construction of the golf course and development of the Property was not done based on the misleading representations by County agents or misunderstanding of the law, but as part of a calculated business strategy employed by the Nemees. The bankruptcy court described this strategy as "it is better to seek forgiveness than to get permission." Bankruptcy Opinion, p. 29. The bankruptcy court detailed how this strategy permeated the Nemees' dealings with the County and the court.

**Testimony Regarding Meaning of Agritourism**

In 2005, while the Nemees' golf course was under construction, County amended its zoning ordinances to allow "agritourism" on law zoned for agricultural use. The Nemees sought approval from the County Board of Supervisors that the golf course was a permitted use as agritourism. The Board of Supervisors denied this request, determining that a commercial golf course was not agritourism under the County zoning ordinances. To assist the court, four expert and percipient witnesses testified concerning the adoption of the 2005 amendments and the meaning of agritourism.

David Zilberman, Ph.D., testified on behalf of the Nemees. Dr. Zilberman is an economist. He advocated that the court adopt an expansive definition of the terms agriculture and agritourism to include any use of the land that produces someone of economic utility. Though a golf course does not produce something which is harvested for food or fiber, the ground is used to grow products (grass, trees, plants) and utilize resources (waterways, features of the land) for reusable use by consumers (golfers). Dr. Zilberman opined that utility derived from the agricultural activity, not the mere destruction or consumption of an agricultural product, should be the basis of the court's interpretation of the County's

zoning ordinances. From the perspective of an economist, Dr. Zilberman concluded that a golf course represents one of the highest and best uses of agricultural property, when compared to the revenues of agricultural land yield through the growth of agricultural crops. The bankruptcy court found that Dr. Zilberman's opinion was made without regard to traditional concepts of agriculture. According to the bankruptcy judge, Dr. Zilberman was clear that he envisioned an economic use policy which allowed the land owner to use it for the most profitable purpose.

Thomas Jacobsen ("Mr. Jacobsen") testified on behalf of the County as an expert witness. He opined that the County was reasonable to determine that the golf course was not agritourism as the term is used in the ordinance based on examples provided in the ordinance itself. Mr. Jacobsen pointed out that none of the permitted examples written into the ordinance required significant change to the land from its traditional agricultural uses, whereas the development of the commercial golf course did.

Kenneth Churches ("Mr. Churches"), a former University of California Davis Cooperative Extension Branch in Agriculture Farm Advisor for County, was presented as both an expert and percipient witness by County. Mr. Churches participated with a group called the Ag-Coalition, which was the sponsor and drafter of the proposed zoning ordinance amendments which were presented to the County and which were ultimately adopted by the County. Mr. Churches opined that agritourism is a type of rural tourism which is intended to enhance and promote the economic viability of more traditional agricultural endeavors. Mr. Churches testified that the Ag-Coalition intentionally drafted the proposed definition in an open-ended, nonspecific terms to allow for future changes in agritourism uses without having to amend the zoning ordinances. The draft language prepared by Ag-Coalition included a series of nonexclusive examples of agritourism. These examples were included in the County ordinance that was ultimately enacted. Notwithstanding these examples, Mr. Churches asserts that so long as there s some form of agricultural activity on a property, the owner could engage in any other activity as a form of agritourism to help make agricultural property more economically viable. Mr. Churches testified that Mr. Nemee was involved with the Ag-Coalition in 2005, but he did not recall whether Mr. Nemee ever asserted that golf was agritourism. Mr. Churches testified that while it was discussed, golf was not included in either the list of permissible activities nor was it expressly excluded from the agritourism definition.

Finally, Mr. Sellman, the County planning director when the 2005 amendments were adopted, testified that he told the Ag-Coalition that golf was not considered to be agritourism, though there is not a reference of this exclusion in the written record. Mr. Sellman also relies on the negative declaration of the amendments which provides that the changes to the zoning ordinances would not cause a significant effect on the environment. Mr. Sellman explains that given the nature of the other examples, allowing a use that so dramatically changes and develops agricultural property into a golf course would not be permitted as agritourism.

### PROCEDURAL HISTORY

The development and use of the Property as a commercial golf course was the subject of County review and non-judicial political proceedings before the County Board of Supervisors. The Nemees then proceeded to file multiple actions in the state court, some of which were removed to the bankruptcy court.

### Adversary Proceeding Trial

The adversary proceeding concluded after a three-day trial. The parties disputed whether the golf course was a permitted use pursuant to the County's zoning ordinances. The Nemees further claimed that the County was equitably estopped from asserting that the golf course was not permitted, based on the statements of Ms. Moreno and other County agents.

In the November 21, 2011. Bankruptcy Decision, the bankruptcy court ruled that the golf course was not a permitted use pursuant to the County's zoning ordinances either as agriculture or agritourism. The bankruptcy court also denied the Nemees equitable estoppel claim. The bankruptcy court issued a permanent injunction enjoining the Nemees from operating the commercial golf course. The bankruptcy court did not issue the judgment immediately. The issuance of the judgment was delayed under December 15, 2011 and the effective date for enforcement of the judgment was delayed until January 27, 2012.

### Motion for New Trial and Motion to Stay

The Nemees appealed from the Bankruptcy Decision. The Nemees also filed a motion for a new trial and a motion to stay the injunction with the bankruptcy court. This Court stayed the proceedings of the appeal for a time to allow the bankruptcy court to address the pending motions.

On January 27, 2012, the bankruptcy court denied the Nemees' motions for new trial and to stay enforcement of the judgment pending appeal. Although the bankruptcy judge denied the motion to stay, the court extended the time period for enforcement of the judgment for a period of time to allow this Court to consider a motion to stay. Accordingly, the judgment will take effect on February 21, 2012.

### Further Bankruptcy Proceedings

The Bank sought relief from the automatic stay to be able to proceed with a non-judicial foreclosure of the golf course property owned by the Nemees. On February 9, 2012, while this motion was pending, the bankruptcy court granted the Bank relief from the automatic stay. Pursuant to this ruling, the Bank initiated non-judicial foreclosure proceedings to sell the Property, which are currently pending.

### Motion to Stay in District Court

The Nemees filed a motion to stay the judgment pending appeal with this Court on February 2, 2012. The County opposed the motion on February 9, 2012. The Nemees filed a reply on February 14, 2012. Having considered the parties' arguments, the attached exhibits, the bankruptcy court's opinions, the applicable case law and the record, this Court found this motion suitable for a decision without a hearing. Accordingly, this Court vacated the February 21, 2012 hearing pursuant to Local Rule 230(g) and issues the following order.

### STANDARDS OF REVIEW

"[A]s part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal." *Nken v. Holder*, 556 U.S. 418, 129 S.Ct. 1749, 1454 (2009) (quoting *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 9, 9 (1942)). The Court's discretion to issue a stay is guided by the consideration of the following four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also, Nken*, 129 S.Ct. at 1760 (noting that "there is substantial overlap between these and the factors governing preliminary injunctions"). "The first two factors of the traditional standards are the most critical." *Nken*, 129 S.Ct. at 1761. The party requesting

a stay bears the burden of showing that the circumstances justify an exercise of the court's discretion. *See Clinton v. Jones*, 520 U.S. 681, 708 (1997).

Although the parties agree on the above standard of review, the parties disagree as to whether this Court may also apply the traditional "serious questions" standard of review. The Nemees argue that this Court should apply the "serious questions" standard to this issue. The Nemees further argue that in applying the "sliding scale" to this action, the strength of the irreparable injury tips in favor of a grant of a motion to stay even if they have not demonstrated a "high probability of success on the merits." County argues that the "serious questions" test is no longer viable in the Ninth Circuit.

After the Supreme Court adopted stringent preliminary injunction standards in *Winter v. Nat'l Res. Def. Council, Inc.*, 129 S.Ct. 365, 374 (2008), there was some confusion as to whether the "serious questions" test continued to be a viable alternative standard of review for preliminary injunctions and motions to stay. Initially, the Ninth Circuit interpreted *Winter* to mean that any lesser standard had been overruled. See, e.g., Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) ("To the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable."). Now, however, the Ninth Circuit has determined that the "'serious questions' version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011).

Under this standard, the Court may grant a stay under where serious questions on the merits are raised and the balance of the hardships tips sharply in the plaintiff's favor, "so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." *Id*.; *see also*, *Vanguard Outdoor, LLC v. City of Los Angeles*, 648 F.3d 737 (9th Cir. 2011). The application of this approach to a motion to stay makes sense, since "a flexible approach is even more appropriate in the stay context" since "stays are typically less coercive and less disruptive than are injunctions." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). If the balance of equities does not tip sharply in the plaintiff's favor, however, this Court shall apply the standard of review as set forth in *Hilton*, 481 U.S. at 776.

### ISSUES PRESENTED ON APPEAL

The Nemees filed a statement of issues presented for review (Doc. 13), which identifies the

following issues for review on appeal:

1. Whether the trial court committed error in ruling the zoning ordinance was a permissive one, including the agricultural zoning portions of the ordinance, and the sections dealing with agritourism which were added in 2005, twenty years after the adoption of the initial permissive ordinance. (The court specifically ignored axioms of construction requiring specific statutes to be given preference over general and later statutes to be given preference over previous statutes.)

2. Whether the trial court committed error in finding that the language contained in the definition of agritourism that it "included but was not limited to" examples given was permissive and because golf was not mentioned, a golf course was not allowed.

3. Whether a plain reading of the zoning ordinance, including agricultural zoning and the definition of agritourism, included a golf course as agritourism when it was located on an olive farm and specifically provided educational as well as recreational activities and materials for the golfers and purchasers of olive oil.

4. Whether the County's Director of Community Development (sic) visit to the Appellants' lender bank justified estopping the County from denying the existence of the golf course when the bank gave an extension of time as well as additional money to Appellants as a result of the visit by the Director of Community Development.

### DISCUSSION

### Balance of Equities

As set forth above, this Court must first determine whether the balance of equities tips sharply in favor of the Nemees. If so, the Court shall apply the "serious questions" sliding scale standard of review. The Court notes that as for the third and fourth factors—assessing how a stay would affect the opposing party and the interest of the public—they merge where, as is the case here, the government is the opposing party. *Nken*, 129 S. Ct. at 1762. The Court considers the particular facts of each case, and does not "simply assume that '[o]rdinarily, the balance of hardships will weigh heavily in the applicant's favor.' " *Id*.

Having considered the parties' arguments and the record, this Court finds that the balance of

equities tips sharply in the Nemees' favor. If the judgment of the bankruptcy court is not stayed, the Nemees face significant hardship, including the loss of their valuable golf course, the loss of their property, and financial ruin. The Nemees have included a declaration from Mr. Nemee setting forth the extent of the hardship he anticipates he will experience absent a stay. Although the County does not address this elements, the hardship to the County includes the inability to enforce its zoning ordinances. This hardship is much less drastic than that which the Nemees face. Accordingly, the balance of equities tips sharply in the Nemees' favor.

## **Serious Questions**

Next, the Nemees must establish that there serious questions going to the merits of their claims. In determining the merits of the Nemees' appellate issues, this Court considers the bankruptcy court's decision under the following legal principles. Findings of fact are reviewed for clear error. *See Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002), *aff'd*, 540 U.S. 644 (2004). This standard also applies to the bankruptcy court's application of law to facts where it requires an essentially factual review. *Id*. The court reviews adopted findings with close scrutiny, even though review remains to be for clear error. *See Phoenix Eng'g & Supply Inc. v. Universal Elec. Co.*, 104 F.3d 1137, 1140 (9th Cir. 1997). Conclusions of law are reviewed de novo. *See Husain*, 316 F.3d at 835. Mixed questions of law and fact are also reviewed de novo. *See Lim v. City of Long Beach*, 217 F.3d 1050, 1054 (9th Cir. 2000). A mixed question of law and fact exists when there is no dispute as to the facts or the rule of law and the only question is whether the facts satisfy the legal rule. *See id.*

Serious questions on the merits of the issues exist when there is a "reasonable probability" or "fair prospect" that the Nemees may be successful in their claims. *Leiva-Perez*, 640 F.3d at 967. Serious questions also arise when there is a "a substantial case on the merits." *Id.* None of these articulations "demand a showing that success is more likely than not. Regardless of how one expresses the requirement, the idea is that in order to justify a stay, a petitioner must show, at a minimum, that she has a substantial case for relief on the merits." *Id.* "[A]t an irreducible minimum, the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2009).

Two of the Nemees' issues on appeal raise no serious questions on their merits. The first issue

raised on appeal regarding the bankruptcy court's determination that the zoning ordinances makes no sense, as the County has carefully explained in its opposition to this motion, particularly since both the general and specific ordinances are permissive. The second issue misunderstands the Bankruptcy Decision. The bankruptcy court did not rule that since golf was not specifically included as an example, it was excluded. The bankruptcy court specifically noted that the way in which it was written, the agritourism amendment allowed flexibility to includes uses that were not specified and to exclude some uses not specified. Accordingly, these issues do not raise serious questions on their merits.

Moreover, most of the Nemees' arguments in this motion raise no serious questions on the merits of their appeal. The Nemees enumerate seven arguments to support their motion to stay the judgment pending appeal, including the following, which this Court quotes from the memorandum:

> First, the current decision is just one Judge's opinion...on an issue that the Judge had probably not decided before.
>
> Second, this Court, in reach (sic) its decision, completely ignored circumstances in (sic) that clearly indicated that the County of Calaveras was not enforcing agricultural zoning violations of substantial magnitude.
>
> Third, the whole California concept of intentionally having vague and ambiguous orders so as to give discretion to Boards of Supervisors and other legislative bodies is a direct conflict of the due process clause of the United States Constitution.
>
> Fourth, because the known irreparable injury of the golf course by a lack of operational funds is so obvious, this Court needs to be particularly cautions in deciding the Plaintiffs' likelihood of success.
>
> Fifth, while the Cross-Complaint of the county prayed for an injunction, they did not pray for an injunction that would kill the golf course while an appeal was pending.
>
> Sixth, Plaintiffs have always believed they were going to win the issue of the golf course being agritourism.

In the seventh point, the Nemees argue that the balance of equities tips sharply in their favor.

The bulk of the Nemees' arguments are unrelated to whether this Court should grant a stay of the judgment pending appeal. Some of these arguments are irrelevant to either the merits of the appeal or the motion to stay. For example, the Nemees first argument–"this is only one judge's opinion"–is unpersuasive and irrelevant. Similarly, the Nemees' sixth point–that they "have always believed they were going to win"–is inapposite. This Court will not consider these arguments further. The second and third issues appear to raise issues that were not raised at trial. The second argument appears to assert

an argument that the County has waived enforcement of the zoning ordinances because it was not enforcing them. This Court finds no evidence that the Nemees asserted a waiver claim in this action. Likewise, the Nemees now attempt to raise a due process claim for the first time in their motion for a new trial and in this appeal (though they fail to identify the issue on appeal). This Court does not consider claims first raised on appeal. Accordingly, this Court rejects these arguments. The Nemees fourth and seventh points address the appropriate standard of review. As set forth above, this Court agrees with the Nemees that the "serious questions" standard applies. These arguments do not, however, address the merits of their claims.

Notwithstanding a number of irrelevant and inapposite arguments, the Nemees do raise serious questions on the issue of whether the golf course is a permitted use pursuant to the County's agritourism zoning ordinance. The County's zoning ordinances 2005 amendments included the following:

> 17.06.0151.  Agritoursim
>
> "Agritourism" means an enterprise located on a working farm, ranch, or other agricultural operation or agricultural plant/facility conducted for the enjoyment and education of visitors, guests or clients that generates income for the owner/operator. Agricultural tourism refers to the act of visiting a working farm/ranch or to any agricultural, horticultural or agricultural operation for the purpose of enjoyment, education, or active involvement in the activities of the farm/ranch or agricultural operation that also adds to the economic viability of the agricultural operation.

This definition also includes a list of examples of land use that would be permitted as "agritourism" in five categories. The categories include "outdoor recreation," "direct agricultural sales," "entertainment," "educational experiences," and "accommodations." Under these categories, some of the listed examples include camping, horseback riding, special events and festivals, agricultural technical tours, winery and vineyard tours, guest ranch and youth exchange. Agritourism is one of the numerous permitted uses listed in the agriculture preserve district, which provides:

> 17.16.020.  Permitted Uses.
> A. The following uses are permitted in the A1 zone:
> 21. Recreational and educational.
> A. Agritourism activities not otherwise specific (less than seventy-five persons on-site at one time)
> B. Agricultural/environmental educational center, private/public,
> C. Educational and interpretative seminars, clinic, walks,
> D. Equestrian facility, personal,
> E. Equestrian facility, private over twenty acres (one to fifteen clients),
> F. Hunting/gamebird club,
> G. Public visitor information or interpretative center,

    H. Rural recreation and camping,
    I. Special event, private (seventy-five to two hundred ninety-nine people),
    J. Special event, private (three hundred to nine hundred ninety-nine people).

While this Court takes no view on the ultimate outcome of this issue, this Court agrees that the Nemees raise serious questions as to whether the golf course is a permissible use on the Property. The Nemees argue that the Property is a permitted use under these provisions. They assert that the golf course is constructed amidst olive trees, which the golfers observe from their golf carts and on the greens. They assert that the golfers are enjoying the activities of an agricultural operation and being educated in the olive orchard operation when they golf and when they purchase olive oil products that are offered at the lodge. To decide these issues, the Court must carefully consider the zoning ordinances according to statutory interpretation principles. In its de novo review, the Court must also consider the testimony of the four experts on this issue. Because there are issues to litigate, this Court finds that there are serious questions going to the merits of the Nemees claim.

### **Irreparable Injury**

Because the Court finds that the balance of equities tips sharply in the Nemees favor and the Nemees have raised serious questions on the merits of their claims, this Court must now consider the final factors. Because the Court has already considered the harm to the public, the remaining factor is whether there is irreparable injury to the Nemees.

The Nemees argue that they will suffer irreparable harm absent a stay. They contend that they will lose their $7 million asset–the golf course. They argue that the golf course, including the plants and trees, will die if not watered and cared for. They further argue that they will lose their property absent a stay, a harm that is irreparable. The County argues that the Nemees will not suffer irreparable injury because they can be compensated through money damages in the event that the decision of the bankruptcy court is overturned.

Although monetary damages are not irreparable, this Court finds that under the circumstances of this case, the Nemees have demonstrated that probability of irreparable harm absent a stay. The type of harm to the golf course and the Property may not be compensable through monetary damages, particularly if the Nemees lose their Property through the Bank's non-judicial foreclosure proceedings. Indeed, the Nemees may lose their Property through foreclosure despite this order to stay the

enforcement of the judgment pending appeal.  Nevertheless, having considered evidence, this Court finds that the probability of irreparable harm exists absent a stay.

### Conclusion

The Court finds that all of factors necessary to justify a stay pending appeal are established.  The balance of the equities tips sharply in the Nemees' favor.  The Nemees raise serious questions as to whether their operation on the Property is a permissible use of the land pursuant to the County's zoning ordinances.  The Nemees have demonstrated the probability of irreparable harm.  Accordingly, this motion to stay pending appeal is granted.

### CONCLUSION AND ORDER

**For the foregoing reasons, this Court GRANTS the Nemees' motion to stay enforcement of the judgment pending appeal.  The Court further ORDERS the parties to file a status report no later than April 6, 2012 to advise the Court about whether or not the pending non-judicial foreclosure proceedings renders this pending appeal moot, since this instant order in no way affects those non-judicial foreclosure proceedings.**

IT IS SO ORDERED.

**Dated:     February 17, 2012**                     /s/ Lawrence J. O'Neill
                                                                         UNITED STATES DISTRICT JUDGE