1

2

3

4

5

6

7

8            **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   MICHAEL KENNETH NEMEE                    CASE NO. CV F 12-02 LJO JLT
     and MICHELLE SEOBHAN McKEE
12    NEMEE,                                  **ORDER ON ISSUES OF MOOTNESS
                                              AND INDISPENSABLE PARTY**
13                   Appellants,

14         v.

15   COUNTY OF CALAVERAS,

16                   Appellee.

17   _____/

18                              **INTRODUCTION**

19         This is an appeal from an adversary proceeding in a bankruptcy action wherein the bankruptcy

20   judge granted judgment in favor of defendant/appellee County of Calaveras ("County") and further

21   granted a permanent injunction enjoining the use of an 18-hole golf course owned, operated, and

22   developed by plaintiffs/appellants Michael Kenneth Nemee ("Mr. Nemee") and Michelle Seobhan

23   McKee Nemee ("Ms. Nemee) (collectively "Nemees"). The Nemees argue that the bankruptcy judge

24   erred as a matter of law by concluding that the golf course is not a permitted use under the applicable

25   County zoning ordinances, which allows land use for agricultural and agritourism purposes.

26         Since the filing of this appeal, several factual developments have required this Court to stay the

27   proceedings. First, the bankruptcy court issued an order granting Community Bank of San Joaquin

28   ("Bank") relief from the automatic stay. Based on that order, Bank moved forward with nonjudicial

1   foreclosure proceedings on the golf course property.  At this time, Bank has foreclosed on the property

2   at issue.  Debtors no longer own the land that is the subject of this action.  Second, this action was

3   converted from Chapter 11 to Chapter 7.  A trustee was appointed to represent the estate.  Neither the

4   Bank nor the trustee have entered into this appeal.  Third, the Bank sold the land to a third party.

5        Based on these factual developments, this Court ordered the parties to brief the following issues:

6   (1) What effect the conversion to Chapter 7 has on this appeal; (2) Whether the Bank, as owner of the

7   property on which the golf course is located, is an indispensable party to this appeal;[1] and (3) Whether

8   the appeal is now moot because the land has been sold.  The Court resolves these issues as follows:  The

9   conversion of the action from Chapter 11 to Chapter 7 transferred the Nemees' interest in their claims

10   to the trustee.  Because the trustee abandoned the estate's claims over this action, however, the Nemees

11   continued to have standing to pursue this appeal.  Next, the Court agrees with the parties that the Bank

12   is not an indispensable party in this appeal.  Similarly, the third party owner of the land is not an

13   indispensable party.  Finally, the Court finds this action is moot, because the Nemees no longer own the

14   property that is the subject of this appeal.  Because the land has been sold, this Court cannot grant the

15   declaratory and injunctive relief the Nemees sought against the County.  Moreover, the Nemees claim

16   for monetary damages is not ripe.  Because this Court lacks jurisdiction, this appeal is DISMISSED.

17   **FACTUAL BACKGROUND**

18        The bankruptcy judge detailed the findings of fact in an inclusive, 65-page memorandum opinion

19   and decision ("Bankruptcy Opinion").  In addition, this Court provided a detailed factual summary in

20   its February 17, 2012 Order on Motion to Stay (Doc. 19) ("Stay Order").  Here the Court provides just

21   the necessary background to address the pending issues.

22        The real property at issue consists of a 160-acre parcel and a 120-acre parcel (the "Property").

23   At the time this action was filed, the Property was owned by Nemees and was property of their

24   bankruptcy estate.  At the time the Property was purchased, it was being used as a cattle ranch and olive

25   orchard.  The Property was zoned as agricultural preserve, which restricts use of the property subject to

26   a Williamson Act Contract.  *See* Cal. Gov. Code §§51200 et seq.

27   

28   [1]The parties brief this issue before the Bank sold the land to the third party.  This Court also considers this question as it relates to the third party.

Quickly after acquiring the Property, the Nemees commenced a survey of the Property for the purpose of constructing a golf course on the Property.  The survey and initial activities drew complaints.  In an August 9, 2001 letter to the Nemees, the County opined that a golf course, whether for public or personal use, was not allowed on property zoned for agricultural preserved under the County's ordinances which were applicable in 2011.  Mr. Nemee testified that he was advised that the construction of a golf course for private, personal use by the Property owner was not a violation of the Williamson Act.

By 2003, the County Building Department became involved with the Nemees' activities on the Property.  In an August 27, 2003 letter, Ray Waller ("Mr. Waller") of the Building Department notified the Nemees that the County had received numerous complaints about a massive grading project on the Property.  Mr. Waller notified the Nemees that they were required to obtain and submit engineering and grading plans pursuant to County ordinances.  With respect to this heavy grading activity, the bankruptcy court found that Mr. Nemee's testimony established that as of August 2003, the Nemees were in the process of constructing the commercial 18-hole golf course on the Property.

On October 1, 2003, Mr. Nemee sought a change in the County zoning ordinances to allow golf courses as a conditional use for any property zoned for agricultural preserve.  In November 2003, the County Compliance Unit notified the Nemees that an administrative hearing was set to address the alleged zoning code violations on the Property.  The alleged violations focused on the grading being done without a permit.  Subsequently, the administrative hearing was removed from the agenda to allow the parties to attempt to resolve the issue.

In July 2004, the Nemees applied with the County for a General Plan Amendment, Zoning Amendment, and Tentative Subdivision Tract Map for the Property.  In the application, the Nemees sought to subdivide the 160-acre parcel of the Property to create twelve 5-acre parcels, one 98.8-acre parcel, and to do minor grading for house pads and roadways.  The application makes no reference to a golf course, and the attached maps of the proposed development do not show a golf course.  Nevertheless, Mr. Nemee testified that at the time of the application, the Nemees intended to construct six golf hoes for the homeowners, who they expected to be family members and friends.  The application was determined to be incomplete, and the Nemees were notified that they were required to amend and

1   re-file the deficient application.

2       In a letter to Mr. Sellman, the Nemees communicated the larger development plans for the

3 Property.  This larger development included an 18-hole golf course with 10,000 to 12,000 rounds per

4 year; private golf tournaments; private golf lessons; two-story, 18,000-square-foot clubhouse/olive

5 tasting facility; bar and grill; banquet facilities; sale of golf equipment; 22,000-square-foot lodge with

6 30 guest rooms; swimming pool; exercise room; spa; and a facility to be used as dormitory housing for

7 group golf lessons, which Mr. Nemee described as an academy.  This was to be placed on 440 acres of

8 property owned by the Nemees and other family members.

9       **Loans Obtained by the Nemees**

10       Loans obtained by the Nemees for the development of the Property make clear that they were

11 building a golf course.  In September 2002, the Nemees obtained a $370,000 loan from Bank.

12 According to the bank note, the primary purpose of the loan is "Business (including Real Estate

13 Investment)".  The specific purpose was noted to be "Refinance of bare land, to be developed to a golf

14 course."  Mr. Nemee disavowed knowledge that the purpose of the loan was to develop a commercial

15 golf course.  He testified that he did not read that part of the loan.  The bankruptcy court found that Mr.

16 Nemee's testimony was not credible and that as early as 2002, the Nemees were obtaining business loans

17 for construction of a commercial golf course.

18       The Nemees continued to obtain loans from the Bank in subsequent years, with the primary

19 purpose of the loan is written to be "Business (including real estate development)," with the specific

20 purpose written to be "Capital for construction, and related expense for Trinitas Golf course."  These

21 loans included an August 25, 2005 loan in the amount of $500,000, and a January 27, 2006 loan in the

22 amount of $1,300,000.

23       **PROCEDURAL HISTORY**

24       The development and use of the Property as a commercial golf course was the subject of County

25 review and non-judicial political proceedings before the County Board of Supervisors.  The Nemees then

26 filed multiple actions in the state court, some of which were removed to the bankruptcy court.

27       **Adversary Proceeding Trial**

28       The adversary proceeding concluded after a three-day trial.  The parties disputed whether the golf

course was a permitted use pursuant to the County's zoning ordinances.  The Nemees further claimed that the County was equitably estopped from asserting that the golf course was not permitted, based on the statements of Ms. Moreno and other County agents.

In the November 21, 2011 Bankruptcy Decision, the bankruptcy court ruled that the golf course was not a permitted use pursuant to the County's zoning ordinances either as agriculture or agritourism. The bankruptcy court also denied the Nemees equitable estoppel claim.  The bankruptcy court issued a permanent injunction enjoining the Nemees from operating the commercial golf course.  The bankruptcy court did not issue the judgment immediately.  The issuance of the judgment was delayed under December 15, 2011 and the effective date for enforcement of the judgment was delayed until January 27, 2012.

**Motion for New Trial and Motion to Stay**

The Nemees appealed from the Bankruptcy Decision.  The Nemees also filed a motion for a new trial and a motion to stay the injunction with the bankruptcy court.  This Court stayed the proceedings of the appeal for a time to allow the bankruptcy court to address the pending motions.

On January 27, 2012, the bankruptcy court denied the Nemees' motions for new trial and to stay enforcement of the judgment pending appeal.  Although the bankruptcy judge denied the motion to stay, the court extended the time period for enforcement of the judgment for a period of time to allow this Court to consider a motion to stay.  Accordingly, the judgment will take effect on February 21, 2012.

**Foreclosure of Property**

The Bank sought relief from the automatic stay to be able to proceed with a non-judicial foreclosure of the golf course property owned by the Nemees.  On February 9, 2012, while this motion was pending, the bankruptcy court granted the Bank relief from the automatic stay.  Pursuant to this ruling, the Bank initiated non-judicial foreclosure proceedings to sell the Property.  The Bank foreclosed on the Property on April 17, 2012.

**Motion to Stay in District Court**

The Nemees filed a motion to stay the judgment pending appeal with this Court on February 2, 2012.  In its Stay Order, this Court granted the Nemee's motion to stay the judgment pending appeal. Its its Stay Order, the Court noted that although the judgment was stayed, the Court's order in no way

5

affected the bankruptcy court's separate order granting the Bank relief from the automatic stay  and allowing the Bank to move forward with foreclosure proceedings.  The Court further ordered the parties to address whether the appeal was moot after the Bank foreclosed on the property.

### Conversion and Appointment of Trustee

The Nemees exercised their rights pursuant to 11 U.S.C. §1112(a) to convert their bankruptcy action to one under Chapter 7.  The bankruptcy converted the action to Chapter 7 by order dated May 12, 2012.  An interim trustee was appointed on May 14, 2012.  The interim trustee was deemed to have accepted the office absent objection filed on May 21, 2012.  A meeting of creditors was set for June 21, 2012.

### Briefing for Pending Issues

After the foreclosure of the Property, the parties filed briefs on the issue of mootness. (Docs. 24, 25).  The Court ordered further briefing on the issue of mootness and to address whether the Bank is an indispensable party on April 25, 2012.  The parties filed those briefs on May 9, 2012 (Docs. 32, 33).

The Court was later informed by the bankruptcy court that the action had been converted to Chapter 7.  Based on that development, the Court ordered the parties to file further briefs to address whether the conversion of the bankruptcy action from Chapter 11 to Chapter 7 affects the merits of the pending appeal, whether this Court is free to issue its ruling on the pending issues related to mootness and indispensability of the Bank, or whether this action is stayed for a period of time because of the conversion.  The parties filed their briefs on these issues on May 31, 2012.

### Trustee Abandons Claims

This Court further stayed this action until June 21, 2012 to allow the trustee to enter this action.  The trustee did not enter this action.  Instead, the trustee filed a motion to compel the trustee to abandon the debtors' real and personal property interests, which include the claims in this action with the bankruptcy court.  The parties have indicated to this Court that the motion to abandon is unopposed.

### DISCUSSION

### Whether the Nemees Have Standing to Pursue this Appeal

When the bankruptcy action converted from a Chapter 11 to a Chapter 7, this Court questioned whether the Nemees continued to have standing to pursue this appeal.  "In addition to having standing

6

at the outset, a plaintiff's state in the litigation must continue throughout the proceedings, including on appeal." *Williams v. The Boeing Co.*, 517 F.3d 1120, 1128 (9th Cir. 2008).  Standing is not subject to waiver and must be considered by the Court at all stages of litigation.  Because this Court's jurisdiction is limited, the Nemees must have standing to continue this appeal.

The conversion of the bankruptcy action from Chapter 11 to Chapter 7 raised the issue of whether the Nemees continued to have standing to pursue the claim in the appeal.  "The trustee in a case...is the representative of the estate.  The trustee in a case...has the capacity to sue and be sued." 11 U.S.C. §§323(a), (b). In Chapter 11 cases, the debtor acts as a debtor in possession, the fiduciary of the bankruptcy estate, and exercises the powers of a trustee. *See* 11 U.S.C. §1107.  The debtor in possession exercises the trustee's authority until either conversion to another chapter (as is the case here) or a Chapter 11 Trustee is appointed. *See* 11U.S.C. §§348(e), 1101(a), 1104.  Thus, the Nemees had standing at the time they filed this appeal.  Once a Chapter 7 trustee is appointed in a case, however, the trustee is the only entity with standing to prosecute a cause of action or appeal that is the property of the bankruptcy estate. *See Eisen v. Moneymaker*, 31 F.3d 1447, 1451 n.2 (9th cir. 1994) ("Eisen, as debtor, has no standing because Moneymaker, as the trustee, is the representative of Eisen's estate.").  "Once appointed a trustee, the debtor's assests and claims pass to the trustee, making the trustee the 'proper party in interest, and the only party with standing to appeal the bankruptcy court's order.'" *Id.*; *see also*, *Estate of Thelma v. Spirtos*, 443 1172, 1175-76 (9th Cir. 2006).  According to this authority, the Nemees appeared to lack standing based on the appointment of the trustee.

Although the trustee was appointed, the trustee chose to abandon the claims that are the subject of this action.  A trustee may abandon an asset of an estate by motion. 11 U.S.C. §554(a).  The trustee moved to abandon the assets by motion filed June 8, 2012.  The trustee further failed to enter this action by the June 21, 2012 deadline set by this Court.  The Court finds that the trustee abandoned the estate's claims to this action.

Abandoned assets revert back to the debtor. *Wallace v. Lawrence Warehouse Co.*, 338 F.2d 391, 394 n.1 (9th Cir. 1964); *see also, CBS, Inc. v. Folks*, 211 B.R. 378, 388 (B.A.P. 9th Cir. 1997).  Because the Nemees, as debtors, retain (or regained) interest in the claims of this action, they continue to have standing to pursue this appeal.  Accordingly, the Nemees have standing to pursue this appeal despite the

1    conversion of the underlying bankruptcy action from Chapter 11 to Chapter 7.

2                        **Whether the Bank is an Indispensable Party**

3            The Bank is the holder of the First Deed of Trust on approximately one-half of the olive

4    farm/golf course and the holder of the Second Deed of Trust on the other half of the olive farm/golf

5    course.  All of the Property that is the subject of the appeal has been foreclosed.  It is undisputed that the

6    Nemees no longer own the Property.  When the Bank became the owner of the Property, this Court

7    ordered the parties to brief the issue of whether the Bank was an indispensable party in this action and,

8    if so, how the Court should proceed.  Both parties agreed that the Bank was not an indispensable party.

9    Thereafter, the Bank sold the land to a third party.  For the following reasons, this Court agrees that

10   neither the Bank nor the third party owner of the land are indispensable parties to this appeal.

11           Federal Rule of Civil Procedure 19(b) requires joinder of entities that are "indispensable." *Id.*;

12   *Merrill Lynch, Pierce, Fennder & Smith, Inc. v. ENC Corp.*, 464 F.3d 885, 891 (9th Cir. 2006).  A party

13   is indispensable if its participation is so important to the resolution of the case that, if not joined, the suit

14   must be dismissed. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 867 n.5 (9th

15   Cir. 2004).  If it is not feasible to join the entity, the court must decide whether the action "in equity and

16   good conscience" can proceed in the absence of the party, or must be dismissed. *EEOC v. Peabody*

17   *Western Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010).  The purpose of the indispensable party rule is

18   to protect the interest of the non-joined party, not the interests of the existing parties. *McCowen v.*

19   *Jamieson*, 724 F.2d 1421, 1424 (9th Cir. 1984); *Mastercard Int'l Inc. v. Visa Int'l Serv. Assoc., Inc.*, 471

20   F.3d 377, 382 (2d Cir. 2006).

21           In analyzing the issue of whether an entity is an indispensable party, the Court "evaluate[s] 'the

22   facts as they existed when the case [was] filed, and not by what happens later.'" *Salt Lake Tribune*

23   *Publishing Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1097 (10th Cir. 2003) (quoting *American Nat'l*

24   *Bank &Trust Co. v. Bailey*, 750 F.2d 577, 582 (7th Cir. 1984)); *see also*, *Freeport-McMoran, Inc. v. K*

25   *N Energy Inc.*, 498 U.S. 426, 428 (1991).  The parties both agree that based on this standard, the Bank

26   was not an indispensable party at the time the action was filed.  This Court agrees.  At the time the

27   original action was filed, the Nemees were the owners of the land, although the Bank did have interest

28   in it based on the outstanding loans.  At the time the appeal was filed, the Nemees continued to possess

the land.  Although the Bank later foreclosed on the land, the Bank is not an indispensable party to this action.  The Court notes further that the Bank later sold the land to a third party.  See Supplemental Brief dated June 15, 2012 and Exhibit 1 attached thereto (Doc. 39).  Applying this standard to the third party, this Court finds that the third party is also not an indispensable party to this action.  Accordingly, neither party is indispensable to this appeal.

### Whether the Appeal is Moot

Although neither the Bank nor the third party owner of the Property is an indispensable party to this action, the sale of the land upon which the golf course was located raises the issue of whether the Nemees continued to present a live controversy to this Court.  As a Court of limited jurisdiction, this Court must consider whether jurisdiction exists pursuant to Article III of the United States Constitution, and dismiss an action if jurisdiction is lacking. *Southern Pacific Transportation Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990), *cert. denied*, 112 S. Ct. 382 (1991); *see also*, Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  This Court's Article III jurisdiction over a case "depends on the existence of a 'case or controversy.'" *GTE California, Inc. v Federal Communications Commission*, 39 F.3d 940, 945 (9th Cir. 1994).

A case is considered moot if, at some time during the litigation process, the controversy posed by the plaintiffs' complaint is no longer "live." *Friends of the Earth, Inc. v. Laidlaw,* 528 U.S.167, 189(2000).  "A case becomes moot whenever it 'los[es] its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.'" *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001) (quoting *Hall v. Beals,* 396 U.S. 45, 48 (1969)).  "This means that...the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Cont'l Bank Corp*., 494 U.S. 472, 477 (1990)).  Thus, the basic question for determining mootness is whether "there is a present controversy as to which effective relief can be granted." *Northwest Envtl. Def. Ct. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988).  "A live controversy exists as long as effective relief may still be available to counteract the effects of the violation." *Id.*

The Nemees sought the following relief in their second amended complaint, which is the operative pleading in this action:

1. For a judicial declaration that the operation of the golf course with less than 75 players at a time is permitted agritourism in an agricultural zone within the County of Calaveras and consistent with its zoning ordinance.

2. That the Court issues a Temporary Restraining Order, Preliminary Injunction and Permanent Injunction restraining the County of Calaveras from interfering with, in any way, Plaintiffs' operation of the olive farm and golf course or requiring Plaintiffs to attend additional administrative proceedings which challenge the use of the golf course.

3. For costs of suit herein incurred; and

4. For such other relief and further relief as the Court deems proper, **except Plaintiffs are not seeking monetary relief in this action.**

Second Amended Complaint, Notice of Removal Exhibit (Bank. Doc. 2) (emphasis added).  As set forth above, the bankruptcy court concluded and adjudged that golf course was not permitted agritourism pursuant to the County zoning ordinance and enjoined the Nemees from further operation of the golf course.  The Nemees appeal from that order and judgment.

After this appeal was filed, the Bank foreclosed on the property and later sold it to a third party. There is no dispute that the Nemees no longer own the land upon which the golf course was located. This subsequent action, coupled with the undisputed fact that the Nemees sought no monetary damages in the operative complaint, yields this action moot.

This Court cannot provide declaratory relief related to whether a golf course is permitted agritourism under the County zoning ordinances, because such an opinion would be advisory. "When a plaintiff seeks declaratory relief...the 'test for mootness...is whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *So. Cal. Painters & Allied Trades, Dist. Council 36 v. Rodin & Co., Inc.*, 558 F.3d 1028, 1035 (9th Cir. 2009) (quoting *Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 963 (9th Cir. 2007)).  Although a live controversy was presented when this appeal was filed, "changes in the circumstances that prevailed at the beginning of the litigation have forestalled any occasion from meaningful relief." *Gator.com Corp. v. LL Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc). The Bank's foreclosure onthe

land upon which the golf course was located is a significant change that forestalled meaningful relief. Because the Nemees no longer own land upon which a golf course is located, they no longer have an adverse legal interest against the County related to whether the golf course is permitted pursuant to the County zoning ordinance.  Because there is no longer a live dispute between the parties in this action, the opinion offered by this Court would be advisory in nature.  Based on these changed circumstances, this Court must dismiss this action as moot. *See So. Cal. Painters & Allied Trades,* 558 F.3d at 1035.

Similarly, this Court cannot grant the Nemees injunctive relief against the County based on the golf course, since they no longer own the land upon which it is located.  When a piece of property is at issue in an appeal, the sale of that property to a third party moots the appeal absent a stay of the sale pending appeal. *See Nat'l Mass Media Telecomm. Sys., Inc. v. Stanley*, 152 F.3d 1178, 1179-80 (9th Cir. 1998) ("because a non-party now owns that property, the district court was powerless to grant that relief.  Thus, plaintiff's case is not moot no matter how many theories it has in support of its claim for return of the property.").  Here, the Nemees abandoned their appeal from the bankruptcy court's order granting the Bank relief from the automatic stay to allow the Bank to foreclose the property.  The Bank then sold the land based on the bankruptcy court's order.  "[W]hen, pending an appeal from the judgment of a lower court, and with any fault of defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plantiff, to grant him an effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal." *Bennett v. Gemmill*, 557 F.2d 179, 187 (9th Cir. 1977).  The sale of the land precluded this Court from granting the Nemees effective injunctive relief.  This Court cannot effectively enjoin the County from interfering with the Nemees' olive farm and golf course operation, because the Nemees no longer have an interest in the land upon which the golf course is located.  Accordingly, this Court must dismiss this appeal.

The Nemees argue that although the land has been sold, they retain an interest in this action because they can pursue monetary damages. *See Ellis v. Brotherhood of Railway, Airline & Steamship Clerks, Freight Handlers, Express & Station Employees*, 466 U.S. 435, 442 (1984) (because a claim for monetary damages remains in this case, the matter is not moot).  It is undisputed, however, that they have no claim for monetary damages in the operative complaint.  Nevertheless, the Nemees argue that should this Court decide in their favor in this appeal, then this action could be remanded to the

11

bankruptcy court wherein they would move to file a supplemental pleading pursuant to Fed. R. Civ. P. 15. The Nemees' monetary damages claim is unripe, however, because it has not been asserted against the County in this action and is dependent on contingent, speculative future events. The doctrine of ripeness is designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). This Court's role is "neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases and controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). For an action to be ripe, the issue presented must be "definite and concrete, not hypothetical or abstract." *Id*. This Court cannot exercise jurisdiction over the Nemees' moot claims based on a hypothetical future event of whether or not this Court will find in the Nemees' favor and whether the bankruptcy court would grant the Nemees' motion to file a supplemental pleading. For these reasons, the Court lacks jurisdiction over the Nemees' appeal.

### Conclusion and Order

For the foregoing reasons, and because this Court lacks jurisdiction, this Court DISMISSES this appeal. The clerk of court is DIRECTED to close this action.

IT IS SO ORDERED.

**Dated:   June 22, 2012**                            **/s/ Lawrence J. O'Neill**
                                                            UNITED STATES DISTRICT JUDGE

12